### HYDE v. MILLER et al.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. MORTGAGES—ASSUMPTION BY GRANTEE—PRINCIPAL AND SURETY.
    Where a mortgagor conveys the mortgaged premises to one who assumes the mortgage debt, the grantee thereby becomes the principal debtor, and the mortgagor his surety.

2. SAME—ACTION BY MORTGAGEE.
    Where successive grantees of mortgaged premises have assumed the mortgage thereon, they each thereby become liable to the mortgagor, and also the mortgagee, for any deficiency on a sale of the mortgaged premises; and the mortgagee may maintain an action against the mortgagor and one or all of the grantees.

3. PRINCIPAL AND SURETY—DISCHARGE OF PRINCIPAL—RELEASE OF SURETY.

A surety is discharged from liability to the creditor if the latter, without the knowledge of the surety, in any way changes or modifies the obligation of the principal debtor, or makes any agreement by which such obligation cannot be enforced.

4. SAME—PAYMENT BY SURETY—DILIGENCE—SECRET AGREEMENT.

Where a mortgagee sued the mortgagor and her grantees, who had assumed the mortgage debt, and subsequently, by stipulation, and without the knowledge of the mortgagor, released the grantee of the mortgagor, the mortgagor is not required, in the exercise of due diligence, to examine the judgment roll before paying the judgment, to ascertain if it contained anything which would justify her in refusing payment of the judgment against her, and in default of which examination she would be precluded from recovering the amount paid from her grantee.

5. SAME—PAYMENT BY SURETY—ACTION TO RECOVER BACK AMOUNT PAID.

The mortgagor cannot be required to bring an action against the mortgagee to recover back the amount paid to him, on the ground that it was paid by mistake, and without knowing of an existing defense thereto.

6 SAME—RELEASE OF PRINCIPAL—EFFECT.

Where a principal debtor makes a secret agreement with his creditor, the effect of which is to discharge him from liability, such agreement does not affect the liability of the principal to reimburse the surety who has paid the debt, in proceedings against him, where at the time of the payment he did not know of such agreement, and could not with due diligence have discovered it.

Spring, J., dissenting.

Appeal from special term, Monroe county.

Action by Emma W. Hyde against Mike Miller and another. From a judgment in favor of the plaintiff, and from an order denying a motion for a new trial, the defendants appeal. Affirmed.

The action was commenced on the 23d day of April, 1898, to recover the amount of a judgment for deficiency, which the plaintiff paid, and which was recovered in an action of foreclosure wherein one Charles Bird was plaintiff, and these defendants and this plaintiff were defendants. On the 1st day of June, 1896, the plaintiff was the owner of a house and lot in the city of Rochester, N. Y. On that day, for a valuable consideration, she executed and delivered to one Charles Bird her bond to secure the payment of $325, and a mortgage on the house and lot as collateral thereto, which was recorded in the clerk's office of Monroe county on the same day. Thereafter, and on the 28th day of October, 1896, the plaintiff conveyed the premises to the defendant Mike Miller; and, as a part of the consideration for such conveyance, he assumed and agreed to pay the mortgage executed by her to Bird, together with the full amount of taxes assessed against the premises, and then unpaid. Thereafter, and on the 5th day of May, 1897, the defendant Mike Miller, by warranty deed, conveyed said premises to the defendant Nicholas Oldfield; and, as a part of the consideration, said Oldfield assumed and agreed to pay said mortgage and the taxes so assessed, and he continued to own said premises until the 6th day of July, 1897, when he conveyed the same to Elizabeth Bennett. The amount secured by said mortgage was not paid when due, and on or about the 20th day of July, 1897, Charles Bird commenced an action in the supreme court to foreclose the same, making the plaintiff and the defendants Mike Miller and Nicholas Oldfield, Elizabeth Bennett, and others, defendants. The complaint contained the usual allegations, and demanded judgment for deficiency against Emma W. Hyde, this plaintiff, Mike Miller, Nicholas Oldfield, and Elizabeth Bennett. This plaintiff did not appear or answer in that action; neither did the defendant Elizabeth Bennett. The defendants Miller and Oldfield appeared and answered separately, but by the same attorney. The defendant Miller alleged, in substance, that there was nothing due upon the mortgage, for the reason that he (Miller) had paid the sums which had become due to Bennett, by the direction of the plaintiff in

that action, and he demanded that the complaint be dismissed as to him. with costs. The defendant Oldfield alleged in his answer that there was no consideration passed between him and Miller for the assumption on his part of the payment of the mortgage, and that by a subsequent agreement with Miller he had been released from such obligation; and he denied that he had agreed to pay said mortgage, or any deficiency. He also alleged that Bird, by a valid agreement, accepted the defendant Bennett as the payee of said mortgage, and fully discharged him from any and all obligation to pay the same. Issue having been so joined between Charles Bird, the plaintiff in that action, and the defendants Mike Miller and Nicholas Oldfield, a stipulation was entered into by the attorney for the plaintiff and the attorney for said defendants Miller and Oldfield, dated the 31st day of August, 1897, which provided: "Upon condition that no deficiency judgment herein be docketed against the defendants Mike Miller and Nicholas Oldfield, the answers interposed herein by said defendants are hereby withdrawn, and notice of all subsequent proceedings in the above-entitled action is hereby waived, except notice of sale, and application for the distribution of surplus moneys." Thereafter such proceedings were had in that action that a decree of foreclosure was had, and judgment for deficiency directed in favor of the plaintiff and against Emma W. Hyde, the plaintiff in this action, and Elizabeth Bennett, for the sum of $469.78, with interest thereon from the 27th day of October, 1897, and execution was directed to issue therefor. The plaintiff in this action had no knowledge of the stipulation so made between the attorney for the plaintiff in that action and the attorney for the defendants Miller and Oldfield. In fact, it appears that the plaintiff in that action himself did not know of such stipulation, but that it was made by his attorney without his knowledge. The stipulation, however, was filed and made a part of the judgment roll in that action. After the recovery of such judgment, Charles Bird demanded the amount thereof from this plaintiff, and she paid the same, and the judgment was satisfied of record. She thereupon brought this action to recover the amount so paid by her from the defendants Miller and Oldfield, who had separately covenanted and agreed to pay the amount of the mortgage made and executed by her as aforesaid.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

F. J. Smythe, for appellant Miller.

Jacob Spahn, for appellant Oldfield.

W. Martin Jones, for respondent.

McLENNAN, J. As between the mortgagor, who is the plaintiff in this action, and the defendant Miller, her grantee, by assuming the payment of the mortgage by his agreement contained in the deed of conveyance to him, became the primary debtor, and the plaintiff his surety. Calvo v. Davies, 73 N. Y. 211; Johnson v. Zink, 51 N. Y. 336; Marshall v. Davies, 78 N. Y. 421; Insurance Co. v. Davies, 44 N. Y. Super. Ct. 172; Blyer v. Monholland, 2 Sandf. Ch. 478. In Trotter v. Hughes, 12 N. Y. 74, the headnote is as follows:

"The acceptance of a deed of mortgaged premises, containing a provision that the grantee is to pay the mortgage, binds him as effectually as though he had signed the deed. A party who accepts from a person liable to pay a debt secured by a mortgage a conveyance of the mortgaged premises, by the terms of which he agrees to pay the debt, is liable to the holder of the mortgage for any deficiency which remains after the application of the proceeds of the premises to the satisfaction of the debt."

It is equally well settled that, by the acceptance of the conveyance to him from the defendant Miller, the defendant Oldfield became liable to the mortgagee, and also to the mortgagor, for any deficiency which

might arise upon the sale of the mortgaged premises. Ferris v. Crawford, 2 Denio, 595. The rule is stated in Wiltsie, Mortg. Forec. § 232, as follows:

"It may be stated as the general rule that all intermediate purchasers who have in succession, from the original obligor, through mesne conveyances, assumed the payment of a bond and mortgage, are personally liable as sureties for a judgment of deficiency in an action to foreclose the mortgage brought by the mortgagee or his assigns." Insurance Co. v. Davies, supra.

The mortgagee, Bird, when his mortgage became due and payable, had a right to commence an action to foreclose the same, and to make all persons parties who had, subsequent to the date of record of his mortgage, acquired any interest in the premises, and to recover judgment for deficiency against this plaintiff, the mortgagor, against her grantee, the defendant Miller, against Miller's grantee, Oldfield, and against Oldfield's grantee, Elizabeth Bennett. Bird also had the right to demand and to recover judgment for deficiency against any one of such parties, and the action of Bird in that regard could in no way affect the rights of such parties as between themselves. If judgment for deficiency had only been demanded and recovered against the plaintiff in this action, she could not have complained, but would have had the right immediately to commence an action against Miller to recover the amount paid by her upon such judgment. If the plaintiff in that action had recovered judgment for deficiency against Miller, he, in turn, could have recovered the amount thereof from Oldfield, and so Oldfield could recover from Elizabeth Bennett. So far as Bird was concerned, each of the defendants in the action above named was jointly and severally liable to him; and it was entirely optional with him whether he would pursue them all, or, if any, which one or more he would seek to recover against.

The rule is well settled that a surety, such as was the plaintiff in this case, is discharged from liability to the creditor, if he, without the knowledge of the surety, in any way changes or modifies the obligation of the principal debtor, or makes any agreement by which such obligation cannot be enforced, or even if he grants an extension of time for the performance of such obligation. Calvo v. Davies, supra; Paine v. Jones, 76 N. Y. 274; Spencer v. Spencer, 95 N. Y. 353. The contention of the appellants is that the effect of the stipulation made by Bird's attorney in the foreclosure action was to discharge the obligation of Miller and Oldfield to pay the mortgage; in effect, that they, having been made parties to the foreclosure action, were bound to plead any defense which they had, and that having withdrawn such defense upon condition that the plaintiff, Bird, would not enter judgment for deficiency against them, they waived their defenses respectively, and he (Bird) waived his right to recover any judgment for deficiency against them in that action; and that he never after could recover such judgment in any action which he might afterwards bring. Assuming, but without deciding, that such was the effect of the stipulation as between Bird and the defendants Miller and Oldfield, it becomes necessary to determine what effect, if any, such stipulation had, or is to be given, as affecting the rights of this plaintiff, who had no knowledge of it, and paid the judgment to Bird in ignorance of its

existence. It would seem to be elementary that the right of a surety to indemnity from his principal cannot be destroyed by a secret agreement made between such principal and the creditor, especially when the agreement is of such a character that the surety had no reason to believe it had been made. If this were not so, it would always be possible for the creditor and the principal debtor to make an agreement which would discharge the principal from liability, and compel the surety to pay or refuse payment to the creditor at his peril. If A., as principal, is indebted to C., and B. is surety, as between themselves A. is liable to B., but both are jointly and severally liable to C. for the amount of the indebtedness. In such case, if demand is made of B., must he refuse payment, and compel the creditor to bring an action against him, in order that he may ascertain and have it adjudicated whether the creditor has made some secret agreement with the principal which is a defense to the claim made against him? The creditor is under no obligation to bring such action. He is at liberty to bring an action against the surety without joining the principal, and in such case how is the surety to protect himself against the effect of an agreement which was made between the creditor and the principal, and of which he had no knowledge? An agreement made between the creditor and the principal which discharges the principal, and which, if pleaded in the action brought by the creditor against the surety, would be a complete defense, can in no way affect the surety, if such agreement is unknown to him, or made under such circumstances that he is not chargeable with notice of the same. The surety may inquire into the good faith of any arrangement between his principal and the creditor. U. S. v. Boyd, 5 How. 29. The principal has no right to require any act of the creditor which will affect the surety. Good faith on the part of the principals in this case required them to immediately notify their surety of the agreement which they had made with her creditor, to the end that she might protect herself from the consequences of their act. As before said, in the case at bar the creditor, Bird, made an agreement which, it is said, discharged the principals, Miller and Oldfield, and left the plaintiff alone liable to him for the mortgage debt. Such agreement was made without the knowledge or consent of the surety, this plaintiff. So far as appears, the fact that she had a defense to the claim of Bird, by reason of such agreement, was not known to her when she paid the claim, nor until she brought her action to recover from the parties who had covenanted to reimburse her for the moneys paid. There is nothing disclosed by the record which would lead her to suspect that any defense existed to the claim made by Bird against her. When the complaint in the foreclosure action was served, she discovered that her obligors, Miller and Oldfield, were parties. She discovered, or might have discovered, from such complaint, that judgment for deficiency was demanded against them as well as against her; and, so far as she knew or could learn, she had no defense to the action, or to the form of judgment demanded. As matter of fact, at that time she had no defense. Therefore it would

have been idle for her, and she was not called upon, to appear or defend in that action, or incur expense for that purpose. So the action proceeded until judgment was recovered, and the plaintiff discovered, or might have discovered, that the judgment was only against her and Elizabeth Bennett. But that fact could not indicate to her that she had a defense, because the plaintiff in that action (Bird) had a right at any stage in its progress to amend his complaint, and demand judgment for deficiency only against the plaintiff in this action. He had a right to discontinue against either of the defendants. As before said, he had a right to proceed against one or either of them, to recover the amount of the deficiency; and, if he had done that, it would not be pretended that the right of the plaintiff in this case to pursue Miller and Oldfield on their covenant to her had in any way been affected. It is true that, if the plaintiff had examined the judgment roll, she might have discovered the secret stipulation which was made a part thereof, and then, for the purpose of obtaining relief, she might have moved to vacate the judgment, to open her default, and for leave to set up the defense which she had learned of for the first time by such examination of the judgment roll. Not until judgment was recovered against her, and the stipulation was filed as a part of the judgment roll, could she have learned that she had a defense to the claim of Bird against her. We think due diligence did not require the plaintiff to examine the judgment roll before paying the judgment, to ascertain whether such roll contained anything which would justify her in refusing payment of the solemn judgment of the court, and that by her failure to make such examination she is not deprived of the benefit of the covenant of the defendants Miller and Oldfield that they would pay any deficiency which arose upon the foreclosure of the mortgage given by her. The defendants Miller and Oldfield are in the attitude of saying to the plaintiff:

"We made an agreement with your creditor, secretly, which discharged us,— made it without your knowledge or consent, and under such circumstances that you could not have known of its existence until after judgment was taken; but, notwithstanding, we are relieved from the obligations incurred by the covenant which we made with you, and you, having paid the judgment which we were bound to pay, except for such secret agreement, are without remedy."

There is no such rule of law. The proposition is not supported by authority or reason. The plaintiff cannot be required to bring an action against Bird to recover back the sum of money which she paid to him, on the ground that it was paid by mistake, and without knowing her rights in the premises, and thus take the responsibility of having the scope and effect of the stipulation determined. She had a right to bring an action directly against these defendants, who, in effect, covenanted to save her harmless against the mortgage which she executed; and the secret agreement made by them, which, so far as appears, was unknown to the plaintiff until set up in their respective answers in this action, does not relieve them of the obligation which they respectively assumed. The rule may be stated to be that where a principal debtor makes a secret

agreement with a creditor, the effect of which is to discharge him from liability to the creditor, such agreement does not affect the liability of the principal to his surety, or the manner of enforcing the same, provided such agreement was not known to the surety, or could not have been discovered by due diligence.

The numerous exceptions taken by counsel for the defendants to the admission and exclusion of evidence have been carefully considered, and we are of the opinion that no one of them presents any error which requires the reversal of the judgment or order appealed from. It follows that the judgment and order should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur, except SPRING, J., who dissents in opinion.

SPRING, J. (dissenting). There is no doubt that Bird, the mortgagee, could have demanded judgment for deficiency against the plaintiff alone in this action, and, upon payment by her, she could have sued Miller and Oldfield. The answer to this suggestion is that Bird did not adopt that course, but did in fact demand judgment against all three. Had he left out Miller and Oldfield, they could have defended against the plaintiff, the same as against the mortgagee. But, when the mortgagee charged them with the payment of any deficiency which might arise, they were obliged to interpose any defense they had, and they availed themselves of that privilege. During the pendency of the foreclosure action the mortgagee entered into the stipulation recited in the prevailing opinion, the purport of which was to release, without reservation, Miller and Oldfield. The parties carried out that arrangement on the one hand by withdrawing the answers, and, on the other, by not entering any deficiency judgment against them. The effect of this stipulation must have been the absolute discharge of these two men. They paid the personal demand against them as effectually as if they had satisfied it by a money payment. It would be an idle ceremony to enter into a stipulation by which they surrendered their defenses, if a deficiency judgment could be entered against their surety which would be as effective against them as a judgment primarily imposing the payment of any deficiency upon them. They were seeking to escape personal liability, and that was the only object of the stipulation. Unless that purpose was accomplished, the whole performance was a mockery. It is plain that Miller and Oldfield were the principals, and the plaintiff in this action the surety, when their respective rights are measured up. Bird knew of the existence of this relation, for the complaint stated the facts upon which that relationship was founded. His agreement, therefore, to discharge these principals, operated to release the surety, Mrs. Hyde. That is as elementary as the other principles enunciated. Brandt, Sur. § 146. After that agreement the mortgagee had no right to enter the judgment for deficiency against Mrs. Hyde. We must assume he knew that by releasing the defendants he as completely exonerated the plaintiff as if her release had been embodied in the stipu-

lation. The defendants could not anticipate he would disregard the import of his stipulation.

Much criticism has been indulged in on the assumption this was a secret agreement between Bird and these defendants. The evidence shows the contrary. It was made in writing, and included in the judgment roll in the action. It was open and public, and the judgment itself recognized its validity by not charging the defendants. The slightest inspection of the judgment roll, which was the basis of the liability against her, would have disclosed that she was released by the voluntary action of Bird, and that inspection she was called upon to make. She was a party to the action, and bound to know what the record in it contained. Again, in the complaint a judgment for deficiency was asked against all the parties to this action. The plaintiff, as we must assume, knew she was eventually liable only in the event of the failure of these defendants to pay. When demand was made upon her for payment, she, as the surety, was put upon inquiry to ascertain why her primary debtors had not satisfied this judgment. Knobloch v. Zschwetzke, 53 N. Y. Super. Ct. 391. That court say at page 397:

"The plaintiff being only secondarily liable, would make him the party to inquire whether the party primarily liable had not satisfied the claim, if there were a duty as to the matter resting on one or the other."

She made no inquiry. She voluntarily paid a judgment she was under no obligation to pay, and now seeks to enforce payment against the defendants, who have already paid the debt once. Her remissness should not be charged up to these defendants, who have acted openly and without collusion, and for her benefit as well as their own. If the defendants had succeeded in their defense to the foreclosure action, their success would have inured to the advantage of the plaintiff. Their defenses rested upon transactions with the mortgagee, and whatever released them absolved her. If, however, he had entered judgment after it had been judicially determined he had lost his claim against them, she could not pay, and then compel these defendants, her principals, to make payment. The entry of judgment would be notice to her at least of sufficient significance to attract her attention. The defendants were discharged by the action of the mortgagee, and the record discloses the transaction as clearly as if the judgment had been entered after a trial on the merits resulting in a decision for the defendants. The plaintiff's remedy is against Bird, not these defendants. The judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event.